IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BOB BURRELL and SUSAN BURRELL,

      Plaintiffs,

      vs.      No. CIV 98-0438 JC/WWD

LEONARD ARMIJO, Governor of Santa Ana
Pueblo and Acting Chief of Santa Ana
Tribal Police; LAWRENCE MONTOYA,
Lt. Governor of Santa Ana Pueblo; NATHAN
TSOSIE, Tribal Administrator of Santa Ana Pueblo;
JERRY KINSMAN, Farm Administrator of Santa
Ana Pueblo; and THE SANTA ANA PUEBLO,

      Defendants.

### MEMORANDUM OPINION ON DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO EXHAUST TRIBAL REMEDIES

THIS MATTER came on for consideration of Defendants' Motion to Dismiss for Failure to Exhaust Tribal Remedies *(Doc. 24),* filed August 6, 1998. The Court has reviewed the memoranda and exhibits submitted by the parties and the relevant authorities. The Court finds that oral argument is unnecessary for its decision. For the reasons set forth below, the motion is well taken and will be granted.

**I.  Factual Background**

Plaintiffs Bob and Susan Burrell brought this action under 42 U.S.C. §§ 1981, 1983 and 1985 alleging numerous violations of their civil rights. Plaintiffs are non-Indians who resided on Santa Ana Pueblo land when most of the events underlying the Complaint occurred. The Defendants are Santa Ana Pueblo and officials of the Pueblo. The Pueblo is a federally-recognized Indian tribe.

Plaintiffs' and Defendants' versions of the facts diverge sharply on several key points. For the purpose of a motion to dismiss based on jurisdictional or prudential considerations, a court presumes all of Plaintiffs' factual allegations are true and construes them in the light most favorable to Plaintiffs. See United States v. Colorado Supreme Court, 87 F.3d 1161, 1164 (10th Cir. 1996) (citing Warth v. Seldin, 422 U.S. 490, 501 (1975)); F.D.I.C. v. Oaklawn Apartments, 959 F.2d 170, 174 (10th Cir. 1992).

Plaintiffs' cause of action arises from events that took place on Pueblo land. Beginning in 1980, Plaintiffs leased Pueblo land for farming. The lease was renewed periodically, with the most recent renewal extending the lease to the year 2003. Plaintiffs allege that Defendants discriminated against them on several occasions between 1980 and 1997 due to their race and sex, but the most significant events appear to have occurred in the spring and summer of 1997. In June of 1997, Defendant Armijo, acting as either Pueblo Governor or Chief of Police, ordered Bob Burrell not to bale hay at night. Plaintiffs allege that nighttime baling of hay is a standard farming practice essential to the economic survival of a farming operation, and that they had been baling hay at night for seventeen years without incident. The nighttime baling restrictions are alleged to be part of a conspiracy by Defendants to drive the Burrells off of the Pueblo land so that the Pueblo could take over a successful farming operation.

Plaintiffs and the Santa Ana Pueblo negotiated a lease termination agreement after the nighttime baling incident. Plaintiffs allege that an agreement was reached, and ratified by the Tribal Council, whereby the Pueblo would buy out the Burrell lease for $500,000. The Pueblo and the individually-named Defendants did not carry out the terms of this alleged agreement, and instead sought to negotiate a better deal. During August 1997, the Pueblo cut and baled the Burrells' hay

without the Burrells' permission.  Some of the hay was distributed by the Pueblo to tribal members. The Burrell family removed their two mobile homes and farm equipment from the Pueblo on August 25, 1997.

Negotiations between the Burrells and Santa Ana Pueblo eventually broke off, and Plaintiffs filed suit on April 14, 1998.  The parties admit that no action has ever been filed in tribal court in connection with this matter.  Defendants filed motions to dismiss and a motion to strike on August 6, 1998.  Discovery has been stayed pending the Court's ruling on the motions to dismiss.

## II.  Applicability of the Tribal Exhaustion Rule

The Supreme Court has held that federal courts should not exercise jurisdiction over cases subject to concurrent tribal jurisdiction unless the parties have exhausted their tribal court remedies. See Iowa Mutual Ins. Co. v. LaPlante, 480 U.S. 9, 15-17 (1987); National Farmers Union Ins. Co. v. Crow Tribe, 471 U.S. 845, 856-57 (1985).  This tribal exhaustion rule is based on the federal government's policy of promoting tribal self-government and a recognition of the important role that tribal courts play in furthering tribal self-determination.  See Iowa Mutual, 480 U.S. at 14.

In both Iowa Mutual and National Farmers, the federal plaintiffs challenged the assertion of tribal court jurisdiction over non-Indians.  This case presents a somewhat different situation because no tribal judicial proceeding is pending.  In these situations, federal courts disagree over whether the tribal exhaustion rule applies when no tribal action is pending.  See Laurie Reynolds, Exhaustion of Tribal Remedies:  Extolling Tribal Sovereignty while Expanding Federal Jurisdiction, 73 N.C. L. Rev. 1089, 1114 (1995).  Nonetheless, the Tenth Circuit Court rule is clear:  the fact that there is no pending tribal court proceeding is irrelevant to the comity considerations that underlie the tribal exhaustion rule.  See Smith v. Moffett, 947 F.2d 442, 447 (10th Cir. 1991).  Therefore, this Court

must consider, as a matter of comity, whether to dismiss the Complaint or abstain until tribal court has had an opportunity to assert jurisdiction.

The tribal exhaustion requirement is clearly implicated in this case even though Plaintiffs are non-Indians. The actions that gave rise to Plaintiffs' complaint took place on the Pueblo, involved the lease of Pueblo land, and concerned the actions of the Tribal Council and tribal officials. "When the activity at issue arises on the reservation," policy considerations supporting tribal sovereignty, orderly administration of justice, and the benefits of tribal expertise "almost always dictate that the parties exhaust their tribal remedies before resorting to the federal forum." Texaco, Inc. v. Zah, 5 F.3d 1374, 1378 (10th Cir. 1993). This Court does not have discretion to refuse to defer when the dispute involves intra-Pueblo affairs. See Crawford v. Genuine Parts Co., 947 F.2d 1405, 1407-08 (9th Cir. 1991), cert. denied, 502 U.S. 1096 (1992).

### III.  Exceptions to Tribal Exhaustion

Federal courts have recognized four exceptions to the tribal exhaustion rule: (1) where an assertion of tribal jurisdiction is motivated by a desire to harass or is made in bad faith; (2) where tribal court jurisdiction patently violates express jurisdictional prohibitions; (3) where exhaustion would be futile because of the lack of an adequate opportunity to challenge jurisdiction; or (4) "it is plain that no federal grant authorizes tribal governance of nonmembers' conduct on land covered by Montana's main rule." El Paso Natural Gas Co. v. Neztsosie, 136 F.3d 610, 614-15 (9th Cir. 1998) (quoting Strate v. A-1 Contractors, 117 S. Ct. 1404, 1416 n.14 (1997)). The last exception, concerning non-Indian land within a reservation's boundaries, does not apply to this case where Pueblo land is involved. The first exception does not apply because no attempt was made to assert tribal jurisdiction.

Plaintiffs argue that the tribal exhaustion rule does not apply for several reasons. First, Plaintiffs argue that the tribal court does not have jurisdiction over Bureau of Indian Affairs ("BIA") leases or causes of action brought for violation of civil rights. Under the tribal exhaustion rule, it is not enough to show that tribal courts lack jurisdiction. Comity requires that the tribal courts themselves must be given the first opportunity to determine whether they have jurisdiction. See Kerr-McGee Corp. v. Farley, 115 F.3d 1498, 1501-02 (10th Cir. 1997). Instead, the exception to tribal exhaustion applies only "where the action [in tribal courts] is patently violative of express jurisdictional prohibitions." National Farmers, 471 U.S. at 856 n.21.

Plaintiffs' response to the motion to dismiss cites no express jurisdictional prohibitions on tribal court authority. The lease provision that Plaintiffs cite simply provides that the parties "agree that violations of this lease shall be acted upon in accordance with the regulations in 25 C.F.R. 131." Exhibit A to Aff. of Bob Burrell *(Doc. 35)* at ¶ 11. Plaintiffs' suit cannot be construed to claim a remedy under this lease provision because Plaintiffs did not follow the administrative procedures specified in the referenced regulations. Plaintiffs also do not cite any express jurisdictional prohibitions which prevent tribal courts from hearing their civil rights claims. In fact, tribal exhaustion is required in civil rights cases arising on reservations. See Smith, 947 F.2d at 443.

Plaintiffs also argue that the absence of a tribal constitution implies that the Pueblo cannot have a competent tribunal. The Court would have to determine the legitimacy of the Tribal Court under tribal law to decide this issue. Principles of comity prevent this Court from deciding whether, under tribal law, the tribal court was a nullity. See Basil Cook Enter., Inc. v. St. Regis Mohawk Tribe, 117 F.3d 61, 66 (2d Cir. 1997).

Plaintiffs also ask the Court to craft an exception to the tribal exhaustion rule because of possible bias, incompetence, and/or other procedural deficiencies of the tribal court system. This argument has been expressly rejected by the Supreme Court. See Iowa Mutual, 480 U.S. at 19. As the Supreme Court pointed out in Iowa Mutual, non-Indians are protected by the Indian Civil Rights Act, 25 U.S.C. § 1302, against unfair treatment in tribal courts. See Iowa Mutual, 480 U.S. at 19. Basically, the Court cannot presume unfair treatment when Plaintiffs have not even presented their case to the tribal courts. The Tenth Circuit has decided that allegations of tribal court bias and incompetence, even if the alleged conduct rises to such a level that no meaningful remedy would be available through tribal courts, cannot be considered where a party chooses not to pursue its case before the tribal court. See Bank of Okla. v. Muscogee (Creek) Nation, 972 F.2d 1166, 1170 (10th Cir. 1992). In short, this Court has an obligation to insure that Plaintiffs have a meaningful forum to settle the dispute, but the proper time to address these concerns is after the tribal courts have had the opportunity to provide such a forum.

Plaintiffs' final argument is that federal courts have jurisdiction over civil rights actions against tribal officers. Plaintiffs point to the Supreme Court's decision in Santa Clara Pueblo v. Martinez, 436 U.S. 49 (1978) to support the proposition that federal courts have jurisdiction over individual tribal officers for civil rights violations. The tribal exhaustion rule is one born out of comity considerations--a prudential restraint on jurisdiction. Abstention based on comity is considered after a court finds that it has jurisdiction. See United States *ex rel.* General Rock & Sand Corp. v. Chuska Dev. Corp., 55 F.3d 1491, 1492 (10th Cir. 1995). Santa Clara Pueblo, decided before National Farmers and Iowa Mutual, does not address the issue of whether comity requires exhaustion of tribal remedies.

-6-

### IV.  Appropriateness of Dismissal or Abstention

Having found that the exhaustion of tribal remedies is required in this case, the Court must consider whether this action should be dismissed or stayed pending the outcome of the Tribal Court proceedings.  See Iowa Mutual, 480 U.S. at 20 n.14; National Farmers, 471 U.S. at 857.  This action was filed less than five months ago.  There has been little, if any, discovery to date and discovery has been stayed pending disposition of Defendants' motions.  Because this litigation is still at an early stage, the interests of respecting tribal sovereignty and judicial economy would best be served by a dismissal of the action without prejudice rather than a protracted stay pending the outcome of the Tribal Court proceedings.  An Order shall be issued in accordance with this Opinion.

DATED this 2nd day of September, 1998.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiffs:

    Chris Lucero, Jr.
    Albuquerque, New Mexico

Counsel for Defendants:

    Richard W. Hughes
    Rothstein, Donatelli, Hughes, Dahlstrom,
     Cron & Schoenburg, L.L.P.
    Santa Fe, New Mexico